UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW GORDON THOMAS,

    Plaintiff,

v.

NANCY BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. 3:17-cv-05855-RBL

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

THIS MATTER is before the Court on Plaintiff Matthew Gordon Thomas's Complaint [Dkt. 1] for review of the Social Security Commissioner's denial of his application for supplemental security income benefits.

Thomas suffers from degenerative disc disease of the lumbar spine (status post two surgeries); and degenerative joint disease of the left shoulder (status post surgery to repair Bankart lesion and labrum tear). *See* Dkt. 5, Administrative Record 19. He applied for SSI on March 29, 2013, alleging he became disabled beginning on January 15, 2013. *See* AR 99-100. That application was denied upon initial administrative review and on reconsideration. AR 112, 127-28. Administrative Law Judge Rudolph Murgo conducted a hearing on November 4, 2015, at which Thomas and a vocational expert testified. AR 66-98. At the conclusion of the hearing, the ALJ determined that expert medical testimony was necessary to decide Thomas's claims, and

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 1

set a supplemental hearing. AR 97. The ALJ set the supplemental hearing on February 17, 2016, but reset the hearing due to late submission of medical evidence. AR 60, 63. The ALJ held a third hearing on May 12, 2016, at which time he took testimony from two impartial medical experts and a vocational expert. AR 38-59.

On June 16, 2016, the ALJ issued a decision finding Thomas not disabled. AR 31. The Appeals Council denied Thomas's request for review on August 18, 2017, making the ALJ's decision the Commissioner's final decision. *See* AR 1-3; 20 C.F.R. § 416.1481. On October 23, 2017, Thomas filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1.

Thomas argues that the Commissioner's decision to deny benefits should be reversed and remanded for further proceedings because the ALJ erred in evaluating the opinion of treating physician Stephen Greaney, M.D.; and in making step five findings unsupported by substantial evidence in the record. Dkt. 9 at 1.

### DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld by the Court if the Commissioner applied the "proper legal standard" and "there is substantial evidence in the record as a whole to support" that determination. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see also Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb*, 433 F.3d at 686 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.  **Evaluation of Dr. Greaney's Opinion**

The ALJ determines credibility and resolves ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

1   The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

2   opinion of a treating physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

3   treating physician's opinion is contradicted, that opinion "can only be rejected for specific and

4   legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.  In

5   general, more weight is given to a treating physician's opinion than to the opinions of those who

6   do not treat the claimant.  *See id.* at 830.

7   Thomas argues the ALJ erred by failing to give a specific and legitimate reason supported

8   by substantial evidence to disregard the opinion of treating physician Stephen Greaney, M.D.

9   that Thomas is limited to standing or walking for one hour at a time, for up to four hours in a

10  normal eight-hour work day.  The Court agrees.

11  Dr. Greaney has been Thomas's primary care physician for at least ten years.  *See* AR

12  1496.  Dr. Greaney opined that Thomas suffers from depression, anxiety, lumbar

13  postlaminectomy syndrome, and myelopathic pain syndrome.  *Id.*  Thomas's primary symptom is

14  pain.  *Id.*  In January 2016, Dr. Greaney completed a functional capacity questionnaire.  AR

15  1496-98.  In the questionnaire, Dr. Greaney opined that, because of Thomas's impairments, he

16  would be limited to lifting and/or carrying 20 pounds occasionally, and 20 pounds frequently;

17  standing and/or walking for one hour at a time, for up to four hours in a normal eight-hour work

18  day; sitting for three to four hours at a time; and occasionally climbing, balancing,

19  stooping/bending, kneeling, crouching, crawling, reaching overhead, reaching to shoulder height,

20  handling, fingering, and feeling.  AR 1497.

21  The ALJ claimed to give Dr. Greaney's opinion significant weight, except as to

22  occasionally reaching, handling, and fingering, which the ALJ found inconsistent with Thomas's

23  medical imaging, and the medical expert's testimony.  AR 28.  However, the ALJ did not include

any standing or walking limitation in his RFC, nor did he give any reasons why he was rejecting this portion of Dr. Greaney's opinion. *See id.*

The Commissioner argues that because the ALJ gave significant weight to Dr. Greaney's opinion and incorporated most of his limitations, the ALJ was not required to give specific and legitimate reasons for doing so. The Commissioner is wrong. Where, as here, the ALJ gives significant weight to a treating doctor's opinion, he must either include the doctor's proposed limitations in the RFC or explain why he did not. *See Flores v. Berryhill*, No. 17-15753, 2018 WL 2439579, at *1 (9th Cir. May 31, 2018) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). The ALJ did neither and, therefore, erred in his treatment of Dr. Greaney's opinion.

The Commissioner further argues that the ALJ was simply resolving a conflict in the evidence, and that evidence in the record supports the ALJ's decision to exclude any standing/walking limitation from the RFC. While the ALJ is entitled to resolve conflicts in the evidence, he still must provide specific and legitimate reasons for rejecting a treating doctor's opinion. *See Lester*, 81 F.3d at 830-31. Moreover, the Court must look to the reasons the ALJ gave for his decision, "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Since the ALJ gave none, the Court cannot uphold the decision.

The ALJ's error cannot be considered harmless. The Court cannot consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006); *see Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The Court conducts a case-specific analysis as to whether harmless error occurred,

disregarding errors that "do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

Here, the ALJ did not ask the vocational expert whether someone with Dr. Greaney's proposed standing/walking limitation could perform the jobs the ALJ determined Thomas could perform. *See* AR 55-58. In response to the only hypothetical the ALJ posed that included a standing/walking limitation at least as restrictive as Dr. Greaney's limitation,[1] the vocational expert testified that such an individual would not be able to do any work in the national economy. *See* AR 57. The Court is unable to conclude from this testimony that the ALJ would have reached the same conclusion had he properly considered Dr. Greaney's opinion, and thus the ALJ committed harmful error.

## II.     The ALJ's Step Five Findings

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83f. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. *Id.* At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his

---

[1] The ALJ's hypothetical limited the claimant to standing or walking for less than two hours total, fifteen minutes at a time, which is more restrictive than Dr. Greaney's limitation. AR 57.

[2] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 416.972.

physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant does not have such impairments, he is not disabled. *Id.* If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 416.920(d). A claimant whose impairment meets or equals one of the listings for the required 12-month duration is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. § 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

Here, the ALJ found that Thomas had not engaged in substantial gainful activity since his disability application date; had two severe impairments (degenerative disc disease of the lumbar spine (status post two surgeries); and degenerative joint disease of the left shoulder (status post-surgery to repair Bankart lesion and labrum tear)); and did not have an impairment or combination of impairments that met or medically equaled the impairments listed in the regulations. AR 19-23. The ALJ thus determined that Thomas had the RFC to perform light

work with, among other things, a restriction of "occasional reaching to shoulder height with the right arm (but not the left)." AR 23.

Thomas argues as an initial matter that the ALJ's reaching restriction is ambiguous. Dkt. 9 at 8. The restriction could be read as saying that Thomas cannot reach to shoulder height with his left arm, or that he has no shoulder height restriction on his left arm. *Id.* The Commissioner concedes that the ALJ's reaching restriction could have been clearer, but contends that any error was harmless. Dkt. 10 at 6-7.

The Court agrees that the ALJ's reaching restriction is ambiguous, and finds that this was harmful error. If the ALJ intended the reaching restriction to mean that Thomas cannot reach to shoulder height with his left arm, then he failed to include that restriction in any of his hypotheticals to the vocational expert. *See* AR 55-58. At best, the ALJ included the same ambiguity in one of his questions to the vocational expert, restricting a hypothetical claimant to "occasional reaching to shoulder height with the right shoulder, but not the left shoulder." AR 55. As such, the ALJ harmfully erred. *See Thomas*, 278 F.3d at 956 (stating that in order for a vocational expert's testimony to be considered reliable, the ALJ's hypotheticals must include all of the claimant's limitations supported by the record). The Court is unable to conclude that the ALJ would have reached the same disability determination had he formulated a clearer reaching restriction.

Thomas further argues that the ALJ erred by failing to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Dkt. 9 at 7-10. Thomas argues that the jobs the vocational expert identified that she believed Thomas could perform based on his restrictions have greater reaching requirements, according to the DOT, than Thomas's RFC would allow.

At step five of the disability determination, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). Based on testimony from the vocational expert, the ALJ concluded that Thomas was capable of performing at least three such jobs: small products assembler, electrical accessories assembler, and production assembler. AR 55-56. According to the DOT, small products assembler requires constant reaching, while electrical accessories assembler and production assembler require frequent reaching. DOT (4th ed. 1991) § 739.687-030, 1991 WL 680180 (small products assembler; *id.* § 729.687-010, 1991 WL 679733 (electrical accessories assembler); *id.* § 706.687-010, 1991 WL 679074 (production assembler).

The DOT raises a rebuttable presumption as to job classification. *Johnson*, 60 F.3d at 1435-36. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007)); *accord* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (2000). Under SSR 00-4p, the ALJ must ask the vocational expert to explain the conflict and then determine whether the explanation is reasonable before relying on the vocational expert's testimony to determine disability. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (citing *Zavalin*, 778 F.3d at 846).

In the present situation, the ALJ did not identify the conflict between the vocational expert's testimony and the DOT. He simply asked the vocational expert whether her testimony

was "according to the DOT," to which she replied, "[y]es, it has been." AR 58.  From this exchange, the ALJ concluded that the vocational expert's testimony was consistent with the DOT.  *See* AR 31.

The ALJ erred by failing to recognize or resolve the apparent conflict between the vocational expert's testimony and the DOT.  Because the ALJ failed to resolve this apparent conflict, the Court "'cannot determine whether substantial evidence supports the ALJ's step-five finding.'"  *Rounds*, 807 F.3d at 1004 (quoting *Zavalin*, 778 F.3d at 848); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("[A]n ALJ 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'" (quoting *Johnson*, 60 F.3d at 1435)).

The ALJ's error was not harmless.  Absent resolution of the conflict between the vocational expert's testimony and the DOT, the ALJ had no reasonable basis to conclude that Thomas could perform the jobs identified by the vocational expert, and thus no basis to reach a disability determination.

### III. Scope of Remand

The Court will remand this matter to the ALJ because it has found the ALJ committed harmful error.  When the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thomas requested that this matter be remanded for further administrative proceedings.  *See* Dkt. 9 at 7.

The Court agrees that remand for further proceedings is the appropriate remedy in this case.  On remand, the ALJ should reevaluate the opinion of Dr. Greaney, explaining his reasoning for accepting or rejecting all parts of Dr. Greaney's opinion; make changes to the RFC

as necessary, clarifying all ambiguities; and reevaluate his findings at step five, resolving any conflicts between the DOT and the vocational expert's testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 21st day of June, 2018.

Ronald B. Leighton
United States District Judge